IN RE: FAUSTINO R. APONTE, RAFAEL DÁVILA ORTIZ, ADOLFO SANTIAGO RIVERA and JOSÉ N. DAPENA LAGUNA, Respondents.

Nos. 87, 88, 89 and 90. Argued February 13, 1956.
—Decided March 14, 1956.

*Faustino R. Aponte, pro se. Benjamín Ortiz, Luis E. Dubón* and *R. García Cintrón* for respondent Dávila. *Héctor Martínez Colón, Lorenzo Lagarde Garcés, Arturo Cintrón García, Héctor L. Lugo Bougal* and *Rafael Hernández Matos* for respondents Santiago Rivera and Dapena. *Rafael L. Ydrach Yordán, Fiscal of the Supreme Court,* for The People.

PER CURIAM.

In compliance with our orders of November 4, 1955, the *Fiscal* of this Court filed separate disbarment proceedings against the attorneys at law and notaries Faustino R. Aponte, Rafael Dávila Ortiz, Adolfo Santiago Rivera and José N. Dapena Laguna. We shall immediately make a brief statement of the facts charged by the *Fiscal* in each one of the complaints filed as well as of respondents' answers.

In the complaint filed against *Faustino R. Aponte*, the *Fiscal* alleges that on January 26, 1950, this respondent willfully and knowingly violated the provisions of the "Act to Establish a Registry of Affidavits or Declarations Executed before Notaries and other Officers" by authorizing affidavit No. 33, allegedly executed by Francisco Arroyo, José Martínez and Ricardo R. Pérez; and in certifying that the executing parties were known to him personally and that the first two as sureties and the other as principal personally subscribed before him the proper document, when actually the sureties were not present and he did not see them sign, nor did he know Francisco Arroyo personally and the latter's signature was in fact forged; and that by means of that affidavit the executing parties subscribed, as principals, a promissory note for the sum of $1,700 plus interest at 6 per cent per annum in favor of the Savings and Loan Fund Association of the Employees of the Insular Government,[1] which Association, relying on respondent's notarial certificate and signature, lent the specified sum to Ricardo R. Pérez.

In his original answer the respondent admits the facts alleged in the complaint and contends that nobody was prejudiced since the principal debtor paid the obligation; that in committing such notarial irregularities, which he admits, there was no fraud or bad faith or profit of any

---

[1] Hereinafter we shall refer to the Savings and Loan Fund Association of the Employees of the Insular Government merely as the "Employees' Association."

kind; and that according to his information the same person who induced him to fail in his notarial duty also did so with three other colleagues.

In a complementary answer the respondent contends that although the surety, José Martínez, did not subscribe before him the document in question, he had personal knowledge of the surety's signature because of his long-time friendship with Mr. Martínez and, furthermore, that Martínez' signature to the note was authentic; that in connection with Francisco Arroyo's signature he was induced to certify it as authentic by the principal of the obligation, Ricardo R. Pérez, who for many years had been a member of the Insular Police and whom he had known for a long time; that the obligation was paid at or before its maturity by the principal debtor, no person being prejudiced thereby; that he authorized the affidavit without receiving compensation, in good faith, and relying on the representations of his friend, policeman Pérez; that since his admission to the bar and the notarial practice (September 17, 1934, and February 8, 1937, respectively) he has devoted himself to the active practice of these professions and has always observed an irreproachable conduct; and that even admitting that his act involved a violation of the postulate of the notarial oath he acted in good faith and without the intention of deriving profit.

In the complaint filed against *Rafael Dávila Ortiz* the *Fiscal* alleges that on August 23, 1954, and in Yabucoa this respondent violated "his notarial oath, by authorizing affidavit No. 22,917 of his . . . Registry of Affidavits, executed by Francisco Arroyo, José Martínez and Ricardo R. Pérez and certifying that he personally knew these executing parties and that the first two as sureties and the other as principal personally subscribed before him . . . the proper document when actually the surety, Francisco Arroyo, was not present at the time the document was subscribed, it not

being personally known to respondent, therefore, and by the act of signing in his presence, that Francisco Arroyo's signature was authentic"; that by means of the affidavit the executing parties subscribed a promissory note as principals. for the sum of $1,925, plus interest at 6 per cent per annum in favor of the Employees' Association, which Association, relying on the notarial certificate and signature of the respondent and on the obligation assumed by the presumptive executing parties, lent the sum of $1,925 to Ricardo R. Pérez.

The respondent Dávila Ortiz in his answer admits having authorized the affidavit in question and having certified that he knew the executing parties, as well as that in the act. of subscribing the document the surety, Francisco Arroyo, was not present, but he denied that it was not personally known to him that Arroyo's signature was authentic. In connection with that paragraph of the complaint the respondent affirmatively alleges that since December 12 and 19, 1924, when he was admitted to the bar and the notarial practice, respectively, he has continuously devoted himself to the practice of his profession as attorney and notary public in this Island, having observed, during all that time, an irreproachable personal and professional conduct which has won him the respect and trust of the community, of his colleagues, and of the judges before whom he has postulated; that since then he has executed 6,161 public deeds and 24,198 affidavits; that Francisco Arroyo, subscriber of the document in question, has been his friend and client since 1925, he having represented him during that period in several criminal and civil causes, and having authorized as notary a series of documents, which he mentions, in which the surety, Arroyo, appears as a party; that during the year 1941 and for the term of 30 days he was acting municipal judge of the judicial district of Yabucoa and Maunabo and that during that time Francisco Arroyo subscribed before

him several bonds for the provisional liberty of defendants in criminal prosecutions; that, by reason of his friendship with Arroyo and their relation as attorney and client, he has seen the latter sign other documents on many occasions; that based on these facts on August 23, 1954, he was in a position to recognize the signature of Francisco Arroyo; that Ricardo R. Pérez was a policeman serving first in Maunabo and later in Yabucoa from the beginning of 1938 until the middle of 1941; he knew him well because of his legal practice in those towns; that on August 23, 1954, Pérez, who had been promoted to corporal and was serving in Villalba or Juana Díaz, came to respondent's office asking him to authorize the document in question, accompanied by the other subscribing party, José Martínez, also his friend and client for over thirty years; that respondent asked corporal Pérez to bring Francisco Arroyo to his office to sign the document before him and immediately Pérez left for Maunabo to fetch Arroyo; that Pérez returned with the document signed by Arroyo and informed him that the latter was unable to come to Yabucoa but that he could be sure that the document had been signed by Arroyo; that at first he refused to authorize the document, but prompted by Pérez' insistence and by his alleged urgency for returning to Villalba or Juana Díaz, and by the fact that he personally knew Francisco Arroyo, he agreed to authorize the document, which he did after carefully comparing Arroyo's signature with his signature appearing in other public documents executed by Arroyo and filed in respondent's Registry. After doing this and after Pérez and Martínez signed in his presence he authorized the affidavit; that Arroyo's signature in that document is authentic and has been acknowledged by the latter as his signature in the investigation made in connection with this matter; and that the debt evidenced by that document has been fully paid to the Employees' Association by the debtor himself, Ricardo R. Pérez. The re-

spondent further alleges that even though he admits that his' act involved a technical violation of the postulate of the notarial oath, since he erroneously set forth that Francisco Arroyo had signed in his presence, he did so in good faith, without the intention of defrauding or deceiving anybody; and that his action, although a technical deviation from the notarial canons, does not imply moral turpitude nor has it caused damage or prejudice to any person.

In connection with the respondent *Adolfo Santiago Rivera* the *Fiscal* alleges that on December 15, 1953, and in Juana Díaz this respondent violated his notarial oath by authorizing affidavit No. 23 of his Registry of Affidavits allegedly executed by Francisco Arroyo, José Martínez and Ricardo R. Pérez; by certifying that he personally knew these executing parties and that the first two as sureties and the others as principal subscribed before the respondent the document in question, when actually neither Francisco Arroyo nor José Martínez was present, nor did respondent see them sign nor did he personally know them, and their signatures in fact were forged; that by virtue of that affidavit the executing parties subscribed, as principals, a promissory note for the sum of $1,925 plus interest at 6 per cent in favor of the Employees' Association and that this institution, relying on the notarial certificate and signature of the respondent and on the obligation which the presumptive executing parties assumed, lent Pérez the sum of $1,925.

In his answer the respondent denies that on the date in question, or in any other date, he violated his notarial oath by authorizing the affidavit in issue but he admits that on that day, at nighttime, and in Juana Díaz, acting as notary he authorized the affidavit by virtue of which a note subscribed by Ricardo R. Pérez as principal, and by Francisco Arroyo and José Martínez as sureties, was authenticated; that about 8 o'clock in the evening, while at his home, Ricardo R. Pérez, a friend of his who at the time was a corporal

of the police serving in that town, came to him seeking his services as notary public for the purpose of authenticating the signatures in a promissory note; that the respondent suggested that Pérez come on the following day to his office, but when he noticed in the note in question the affixed signatures of Francisco Arroyo and José Martínez, who were unknown to him, he told Pérez that he could not authenticate the signatures of these two persons unless they came personally to his office; that then Pérez told him that he had to leave early the next day for Salinas, that he would not be in Juana Díaz in the morning, that he was in a hurry to obtain the loan because of his urgent need of the money and to please authenticate it on that same night; that yielding to Pérez' plea without any reason to suspect that the signatures in the document might be spurious and giving entire credit to corporal Pérez because of his good reputation in the community, he consented to go to his office and there authenticated the document, corporal Pérez alone being present; that he rendered him that service without receiving compensation and what is more, he also gave him, free of charge, the internal revenue stamp of 25¢ canceled on the document; that when he told Pérez that the sureties of the document had to see him personally, Pérez told him that those persons had been in Juana Díaz during the day and not finding any notary there, they had had to leave for their respective towns whereby he could not bring them to him that night, but assuring him at all times that Arroyo's and Martínez' signatures appearing in the document were legitimate, authentic and genuine; that the amount of the loan was paid timely and fully, both the principal and the interest, by Ricardo R. Pérez himself and, as a matter of fact, neither the creditor Association nor third parties were prejudiced, defrauded or injured in their interests; that on the day the document was authenticated he had been practicing his profession as attorney for only 2 months and in

the notarial practice for 45 days; that he was 26 years old at the time; and that in the 22 affidavits that he had previously authenticated, all the affiants had appeared before him and that the only time in which he was made to commit an irregularity was in the affidavit authenticated under No. 23 of his Registry, the beneficiary having taken advantage of respondent's youth and professional inexperience.

And in the complaint filed against *José N. Dapena Laguna* the *Fiscal* alleges that on October 16, 1952, and at Ponce this respondent violated his notarial oath by authorizing affidavit No. 9,837 of his Registry, allegedly executed by Francisco Arroyo, José Martínez and Ricardo R. Pérez, in certifying that the executing parties were known to him personally and that the first two as sureties and the other as principal personally subscribed before him the document in question when actually Francisco Arroyo and José Martínez were not present and respondent did not see them sign, nor did he know them personally and the signatures of the latter were forged; and that by virtue of the affidavit in question the executing parties subscribed as principals a promissory note in the sum of $1,950 plus interest at 6 per cent per annum in favor of the Employees' Association, which Association, relying on the notarial certificate and signature of the respondent, and on the obligation which the alleged executing parties assumed, lent Pérez the indicated sum.

The respondent, Dapena Laguna, in his answer admits having authorized the affidavit in question by means of which a promissory note subscribed by Ricardo R. Pérez and by two other persons who were identified by Pérez as Francisco Arroyo and José Martínez, was authenticated; that at the time the document was authenticated Pérez was a corporal of the police and a public officer personally known to respondent for several years and worthy of his entire trust; that Pérez assured him at his own office and in the presence of

the other two affiants that these were the persons thus named and who would execute, as they did, the document as sureties; that in authenticating the document, free of charge and out of friendship, the respondent did not have the least reason for suspecting or doubting the identification, acknowledgment and signatures of those two sureties, or for suspecting the possibility of being deceived by the three of them, or for demanding, considering the capacity of the principal, other witnesses of identification of those two sureties; that the amount of the loan, both the principal and the interest, was timely and fully paid by Ricardo R. Pérez and without other persons having been required to pay it or to account for the authenticity of the signatures appearing in the documents; and that neither the creditor Association nor third persons were prejudiced, defrauded or injured. The respondent further incorporates in his answer the transcript of the stenographic record taken in case G-55–105 filed by the People of Puerto Rico against Ricardo R. Pérez for the offense of forgery, in the Ponce Part of the Superior Court of Puerto Rico.[2]

 Section 3 of the Act of March 12, 1908—4 L.P.R.A. § 889—establishing a registry of affidavits or declarations executed before notaries and other officers, provides:

"Section 3.—The affidavit or declaration of authenticity shall be drawn in the following form. In the case of the recognition of a signature under oath:

"Sworn to and subscribed before me, by . . . . . . . . . . . . . . . (name, age, trade or occupation and residence) personally known to me (or who has been identified to my satisfaction by the two witnesses, known to me, whose statement to that effect is also signed by them), this, the . . . . . . day of . . . . . . . . . . . . . . . 19 . . . . .

"In the case of the recognition of a signature not made under oath, the same form shall be used, except that the words 'sworn to' shall be stricken out.

---

[2] From the transcript of evidence, certified only by the record stenographer, it appears that Pérez was declared guilty of the forgery charged.

"A concise and simple form shall be used for all other cases and which shall include the authenticity of the act, but in all cases the officer authorizing same shall set forth that he knows personally the interested party; or knows the witnesses identifying such party."

It is incontrovertible that Faustino R. Aponte, in authorizing the affidavit in question, did not have before him or see the solidary sureties (principal debtors) Martínez and Arroyo in the act of signing, and that the signature of the latter was forged; that Rafael Dávila Ortiz set forth in the affidavit that Francisco Arroyo subscribed it in his presence when he was personally certain that it was not true; that Adolfo Santiago Rivera did not have before him, or see signing, or know personally the solidary sureties, Francisco Arroyo and José Martínez, and that their signatures were forged; and that José N. Dapena Laguna, without knowing José Martínez or Francisco Arroyo and without attempting to identify them through the testimony of two witnesses, authorized the affidavit in question. Since the respondents admitted the irregularities charged, we deem it unnecessary to hold hearings in connection with the complaints.

There is no doubt that in acting as they did the respondents violated their notarial oath. The practice of the profession of attorney and notary demands that the persons invested with such a high ministerial duty should always act not only with the greatest zeal but also in strict adherence to the law and the duties imposed on them. The respondents, in acting as they did, were not zealous in the practice of their profession nor did they comply with the provisions of law copied above.

After considering the excuses given by each one of the respondents, different from the cases of In re Piñero, 77 P.R.R. 596; In re Ardín, 75 P.R.R. 466; and In re Vergne Ortiz, 67 P.R.R. 28, we shall not separate them from the practice of their profession of attorneys. We reprove, however, their conduct as such in acting as they did in con-

nection with the facts charged in the complaints. However, pursuant to the cited precedents and in harmony with the provisions of § 38 of the "Act to Regulate the Practice of the Notarial Profession in Puerto Rico" of March 8, 1906, as amended by Act No. 389 of 1951 (Sess. Laws, p. 956) —4 L.P.R.A. § 846—we shall suspend each of the respondents from the practice of the notarial profession for the period of one month.

---

Mr. Justice Negrón Fernández, concurring.

I agree, for the reasons stated in my opinion, dissenting in part, in *In re Ardín*, 75 P.R.R. 466, 470, and ratified in *In re Piñero*, 77 P.R.R. 596, that the suspension of the respondents in this case should be limited to the scope of the professional field itself in which it was produced: the notarial practice.

The fault of the notaries in these cases, like that of the notaries in the cases *supra* and of the notary in *In re Vergne Ortiz*, 67 P.R.R. 28, serious as it is in the notarial profession, does not imply moral turpitude nor involve collusion or fraud. Neither in these cases nor in the former is there any dishonorable professional precedent. Under the circumstances, a disbarment, which would in itself transcend the disciplinary limits which the fault entails, is not justified.

Although the punishment imposed on the notaries in the cases *supra* cannot, once consummated, be wiped out of their professional life, the application of a different disciplinary standard in these cases should be considered appropriate in order to measure the scope of such punishment and reduce to an adequate level the rigor of the disbarment.